## LILLIE CRAMER *et al.*

*v.*

## HORACE HOOSE.

RESULTING TRUST—*when it arises.* A person made a contract for the purchase .of a tract of land, the terms in respect to payments being agreed upon between him and his vendor,—a portion of the purchase money to be paid down in cash, and the balance in certain deferred payments. The cash payment was made by the purchaser himself. The papers concerning the purchase were adjusted by the father of the purchaser,—he, the father, taking the deed in his own name, giving his own notes for the deferred payments, and executing a mortgage on the premises to secure those notes. The father also paid the larger part of the purchase money embraced in the notes; but these payments were made by the father under a contract with the son, by which the former promised to make the deferred payments in consideration that the latter would not move to another State: *Held,* the payments so made by the father would be regarded as having been made by the son—the real purchaser,—and from the transaction would spring a resulting trust in favor of the son.

APPEAL from the Circuit Court of Henry county; the Hon. GEORGE W. PLEASANTS, Judge, presiding.

Mr. T. G. AYRES, and Mr. C. DUNHAM, for the appellants.

Messrs. MOCK & HAND, for the appellee.

Mr. JUSTICE DICKEY delivered the opinion of the Court:

In September, 1868, Horace Hoose, appellee, made a contract with Charles Stackpole for the purchase of forty acres of land, the subject of controversy in this suit. By the terms of the contract the price was $350. $100 was paid down and the balance secured by three promissory notes, two of them for $100 each and one of them for $50. The down payment of $100 was made by Horace. The adjustment with Stackpole of papers evidencing the purchase, etc., seems to have been transacted by Nicholas Hoose, the father of Horace. He took the deed in his own name, and gave the notes for the deferred payments in his own name, and secured the same by a mortgage of the premises, which he signed in his own name. The proof shows, satisfactorily, that in transacting this business he acted for Horace, and that it was he who caused the deed, notes and mortgage to be made in his name and not that of Horace.

It turned out that Nicholas paid one of the $100 notes and the $50 note, and the interest on the other $100 note up to February, 1872, and of the principal of that note a sum of from about $17 to about $30. It would seem that he had promised Horace that he would make some of these deferred payments for Horace, in pursuance of a contract made with Horace, in consideration that Horace would forbear to move to another State. It was clearly the understanding that whatever money the father should pay on this account was to be regarded as payments for Horace, and when made they were payments by Horace through his father. After the death of Nicholas, Horace paid the residue of this last note. During some of the years Horace paid the taxes on this land and during other years Nicholas paid the taxes.

Immediately after the purchase of this land from Stackpole,

Horace Hoose took possession of the premises and cultivated the same and made improvements thereon. The proof tends to show, and we think shows satisfactorily, that the purchase was made by Horace Hoose, and that every dollar paid for the property was a payment by Horace Hoose; that part of the payments made by his father were evidently payments. by Horace—his father making such payments for him. These acts of the father were done in compliance with a contract made by him with his son, by which he promised to pay the deferred payments for the son, for and in consideration that the son would comply with his wishes and forbear to move to another State. Being paid in pursuance of such a contract, such payments have the same legal effect as if the money had been paid to Horace by his father and he had paid it to the holders of the notes. From these facts springs a resulting trust, placing Nicholas, in holding the legal title, in the position of a mere trustee for Horace.

The decree of the circuit court was right, and must be affirmed.

*Decree affirmed.*